UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD JAY BIANCHI,

                              Petitioner,          Case No. C22-5957-JLR-SKV

        v.

                                                   REPORT AND RECOMMENDATION

JERI BOE,

                              Respondent.

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Ronald Bianchi is a Washington prisoner who is currently confined at the

Clallam Bay Corrections Center in Clallam Bay, Washington.  He seeks relief under 28 U.S.C.

§ 2254 from a 2019 Clark County Superior Court judgment and sentence.  *See* Dkt. 4.

Respondent has filed an answer responding to Petitioner's federal habeas claims and has

submitted relevant portions of the state court record.  Dkts. 7, 8.  Petitioner has filed a response

to Respondent's answer.[1]  Dkt. 11.  This Court, having carefully reviewed Petitioner's petition

---

[1] Petitioner's original response to Respondent's answer, which was received for filing on April 9, 2023, did not bear Petitioner's signature. Dkt. 9.  Petitioner was advised of this deficiency (Dkt. 10), and he submitted a signed and dated copy of his brief on April 16, 2013 (Dkt. 11). To avoid unnecessary confusion, Petitioner's original responsive brief (Dkt. 9) should be STRICKEN from the record.

REPORT AND RECOMMENDATION
PAGE - 1

for writ of habeas corpus, all briefing of the parties, and the state court record, concludes that the petition should be denied, and this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Factual Background

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's convictions as follows:

> On October 17, 1997, Ronald Bianchi, Michael Brock, and Aaron Ahern robbed Seafirst Bank in Vancouver, Washington. Before the bank robbery, Bianchi stole three cars: a Mustang, a LeBaron, and a Camaro. He parked these cars at different locations throughout the area. In preparation for the robbery, Bianchi and Ahern made pipe bombs. He and Ahern stole firearms, ammunition, and a grenade.

> Before the robbery, the men placed a bomb behind a Kmart store, to draw attention away from the bank. When the bomb exploded, a truck driver was behind the Kmart store completing a delivery at Kmart's loading dock, but he was not injured.

> When the three men entered the bank, one of them held a gun to an employee's head. The men stole money from the bank. Bianchi drove the getaway car, the LeBaron. They drove the LeBaron to the Mustang, and got into that car. In the Mustang, they noticed police following them.

> Sergeant Craig Hogman, from the Clark County Sheriff's Office, was on traffic patrol at the time, driving in an unmarked police car. He heard radio broadcasts about the explosion and the bank robbery. Sergeant Hogman was in the area of the bank and noticed a Mustang with three people in it, and he started to follow the car to see if they were the suspects. When the Mustang accelerated, Sergeant Hogman turned his lights and siren on. Someone in the Mustang hung out the passenger door window to fire at him with a high powered rifle. He stated the rear window of the Mustang disintegrated, and someone fired out of the back window of the car. He testified, '[M]y assumption was that they had shot out the rear window so that they would have a clear line of sight for shooting at me." Rounds of "constant" gunfire struck his patrol car.

> At one point, the Mustang was stopped in the middle of the road, and the shooters in the Mustang "opened fire." Sergeant Hogman says he "took on the most rounds in [his] patrol car." Sergeant Hogman ducked under his dashboard, "trying to move around in attempt not to get hit." He felt "bits of materials that [were] like little bits of shrapnel that [were] exploding inside the car." His "radar unit that

REPORT AND RECOMMENDATION
PAGE - 2

[was] directly in front of [him] in the patrol car expode[d]." His "driver's window exploded," and the "entire car interior [wa]s exploding at that point." After the shooting stopped and the Mustang drove away, Sergeant Hogman continued to pursue the Mustang at a distance until he lost sight of it.

Officer Lawrence Zapata and Officer Adam Millard, from the Vancouver Police Department, heard from dispatch that Sergeant Hogman needed help. They located the suspects' car, and heard a gunshot coming from the direction of that vehicle. The officers followed the car, and Officer Zapata could see someone firing a rifle out of the back of the car, and another person firing a shotgun out of the passenger side window. Officer Zapata testified that he heard both weapons firing, and counted "five or six" shots. Officer Zapata fired a single shot. After this, "rounds [were] still being shot at us," and he saw muzzle flashes.

Eventually, the Mustang hit a tree. Bianchi, Ahern, and Brock ran from the car into a nearby ravine. After the car crashed, Bianchi took off running, while Brock and Ahern fired at the officers. Officer Zapata trained his shotgun on Bianchi, but watched Bianchi run into the ravine out of his sight. Officer Zapata testified that he heard gunfire coming from the ravine, and saw one of Bianchi's accomplices with a shotgun. The officers returned fire, and at some point, the two suspects firing from the ravine were no longer moving. Bianchi fled the ravine and attempted to hide, but he was eventually apprehended by a police officer.

On October 23, 1997, the State charged Bianchi with first degree robbery, three counts of attempted first degree felony murder, and second degree malicious explosion. A second amended information added two additional counts of first degree robbery, two counts of second degree assault, attempt to elude, and three counts of first degree possession of stolen property. Bianchi pleaded guilty to all counts. In exchange for Bianchi's guilty plea, the State dropped charges against his girlfriend, who was charged with multiple felonies related to being an accomplice in all the crimes Bianchi pleaded guilty to in 1998. Bianchi was sentenced to 72 years in prison.

In 2008, the Washington Supreme Court held that attempted felony murder was no longer a crime. *In re Personal Restraint of Richey*, 162 Wn.2d 865, 870, 175 P.3d 585 (2008). Following that decision, Bianchi brought a personal restraint petition challenging the validity of his convictions for that offense. *In re Pers. Restraint of Bianchi*, No. 49296-2-II, slip op. at 1, 4 (Wash. Ct. App. Feb. 22, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049296-2-II%20 Unpublished%20Opinion.pdf. The Court of Appeals vacated his three counts for attempted first degree felony murder. *Id*. at 1, 4. On remand, the trial court granted Bianchi's motion to withdraw his guilty plea for the rest of his counts.

The State filed a fourth amended information on September 1, 2017, charging Bianchi with three counts of attempted first degree murder against the

REPORT AND RECOMMENDATION
PAGE - 3

three officers. It also charged him with three counts of robbery in the first degree, two counts of assault in the second degree, attempting to elude a pursuing police vehicle, three counts of possession of stolen property, and malicious explosion in the second degree. A fifth amended information added three charges of attempted murder in the second degree.[2]

The case first went to trial in January 2019. The jury found Bianchi guilty of most charges, including attempted murder in the first degree of Sergeant Hogman. The court declared a mistrial on the charges related to attempted first and second degree murder of Officers Zapata and Millard.

The State retried Bianchi on the attempted murder charges, with trial beginning in September 2019. The jury found Bianchi guilty of both attempted first and second degree murder of Officers Zapata and Millard at the second trial. Bianchi was sentenced to 1,131 months, or over 94 years, in prison.

Dkt. 8, Ex. 2 at 1-5.

**B.    Procedural Background**

Petitioner was originally convicted in May 1998 following his entry of a guilty plea to the State's third amended information, which included the following charges: three counts of robbery in the first degree, two counts of assault in the second degree, three counts of attempted felony murder in the first degree, one count of attempt to elude, three counts of possession of stolen property in the first degree, and one count of malicious explosion in the second degree. *See* Dkt. 8, Exs. 3, 4. Petitioner was subsequently sentenced to a total term of confinement of 864 months. *Id.*, Ex. 3 at 9.

In July 2016, Petitioner filed a post-conviction motion in the Clark County Superior Court seeking to vacate his convictions on the three counts of attempted felony murder in the first degree. Dkt. 8, Ex. 5. Petitioner argued therein that under the Washington Supreme Court's decision in *In re Richey*, 162 Wn.2d 865, the offense of attempted felony murder in the first

---

[2] [Court of Appeals footnote 1] The State also filed sixth and seventh amended charges before the first trial ended. The sixth amended information removed the charge for attempting to elude a pursuing police vehicle. The seventh amended information removed one charge of assault in the second degree.

REPORT AND RECOMMENDATION
PAGE - 4

degree did not exist in Washington. *See id*. Petitioner asked that his convictions with respect to the non-existent crimes be vacated and that he be resentenced on the remaining counts. *Id*. The Superior Court determined that Petitioner's motion was time-barred and transferred it to the Washington Court of Appeals for consideration as a personal restraint petition. *Id*., Ex. 6.

Following additional briefing, the Court of Appeals granted the personal restraint petition and vacated Petitioner's three convictions for attempted first degree felony murder. *See* Dkt. 8, Exs. 7, 8, 9. The court, however, rejected Petitioner's requested remedy of resentencing only on the ten remaining counts that were part of the original plea agreement. *See id*., Ex. 9 at 2-3. Instead, the court determined that the appropriate remedy was to return the parties to the positions they were in before they entered into the plea agreement. *Id*. at 3. Thus, the court explained, on remand the State would be entitled to file any charges for which the statute of limitations had not run, and Petitioner would be entitled to withdraw his pleas of guilty to the remaining ten counts. *Id*. The Court of Appeals issued the mandate in Petitioner's personal restraint proceedings on August 9, 2017. *Id*., Ex. 10.

On remand to the Superior Court, Petitioner withdrew his guilty pleas and the state amended the charges. *See* Dkt. 8, Exs. 11, 12, 13, 14, 15. As relevant here, on September 1, 2017, the state filed its fourth amended information, charging Petitioner with three counts of attempted murder in the first degree, along with three counts of robbery in the first degree, two counts of assault in the first degree, one count of attempting to elude a pursing police vehicle, three counts of possession of stolen property in the first degree, and one count of malicious explosion in the second degree. *Id*., Ex. 12. Petitioner thereafter moved to dismiss the three counts of attempted murder in the first degree, and that motion was denied by the trial court. *See id*., Ex. 16; *see also* Ex. 17 at 3-4. Petitioner sought discretionary review of the trial court's

REPORT AND RECOMMENDATION
PAGE - 5

1    decision in the Washington Court of Appeals, and that court denied review.  *See id*., Exs. 17, 18,

2    19.

3        Following two subsequent trials, both of which were conducted in 2019, Petitioner was

4    convicted, in total, of two counts of robbery in the first degree, two counts of possession of

5    stolen property in the second degree, one count of malicious explosion, one count of assault in

6    the second degree, and three counts of attempted murder in the first degree.  *See* Dkt. 8, Ex. 1 at

7    1-2.  Petitioner was sentenced in November 2019 to a total term of 1,131 months confinement.

8    *Id*. at 6.

9        Petitioner appealed his new judgment and sentence to the Washington Court of Appeals.

10   Dkt. 8, Exs. 21, 22, 23, 24.  The Court of Appeals affirmed Petitioner's convictions, though it

11   determined that possession of two stolen vehicles constituted a single unit of prosecution and that

12   charging the offenses separately violated double jeopardy, entitling Petitioner to be resentenced

13   on a single count of possession of stolen property.  *Id*., Ex. 2 at 31.  The court, thus, affirmed in

14   part, reversed in part, and remanded the case for resentencing.  *Id*. at 32.

15       Petitioner next sought review by the Washington Supreme Court.  Dkt. 8, Ex. 25.  The

16   Supreme Court denied Petitioner's petition for review without comment on September 7, 2022,

17   and the Court of Appeals issued a mandate terminating direct review on September 23, 2022.

18   *Id*., Exs. 26, 27.  Petitioner now seeks federal habeas review of his convictions.

19                              **III.    GROUNDS FOR RELIEF**

20       Petitioner identifies the following four grounds for relief in his petition for writ of habeas

21   corpus:

22       **Ground One:**  The State "broaden [and] substantially amened (sic)" the charges
         after the statute of limitations expired.

23

REPORT AND RECOMMENDATION
PAGE - 6

**Ground Two:**  Mr. Bianchi was denied his constitutional right to present a defense.  U.S. Const. Amend. Sixth (sic) and art. I, § 22.

**Ground Three:**  Prosecutorial Misconduct Deprived Mr. Bianchi of a fair trial. Violating U.S. Const. Amends. VI, XIV, art I, § 22.

**Ground Four:**  Ineffective Assistance of Counsel

Dkt. 4 at 5, 7, 8, 10.

## IV.    DISCUSSION

Respondent concedes that Petitioner has properly exhausted his federal habeas claims by fairly presenting the claims to the Washington courts as federal claims.  Dkt. 7 at 7.  Respondent argues, however, that Petitioner is not entitled to relief with respect to any of his asserted claims. *See id*. at 13-28.

### A.    Federal Habeas Standard, 28 U.S.C. § 2254

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

REPORT AND RECOMMENDATION
PAGE - 7

1    Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

2    the state court identifies the correct governing legal principle from the Supreme Court's

3    decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at

4    407-09.

5      The Supreme Court has made clear that a state court's decision may be overturned only if

6    the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

7    The Supreme Court has further explained that "[a] state court's determination that a claim lacks

8    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

9    correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

10    (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

11      Clearly established federal law, for purposes of AEDPA, means "the governing legal

12    principle or principles set forth by the Supreme Court at the time the state court render[ed] its

13    decision."  *Lockyer*, 538 U.S. at 71-72.  This includes the Supreme Court's holdings, not its

14    dicta.  *Id.* at 71.  "If no Supreme Court precedent creates clearly established federal law relating

15    to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be

16    contrary to or an unreasonable application of clearly established federal law."  *Brewer v. Hall*,

17    378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

18      With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

19    court's conclusion was based on "an unreasonable determination of the facts in light of the

20    evidence presented in the state court proceeding."  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

21    (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A]

22    decision adjudicated on the merits in a state court and based on a factual determination will not

23    be overturned on factual grounds unless objectively unreasonable in light of the evidence

REPORT AND RECOMMENDATION
PAGE - 8

presented in the state-court proceeding[.]").  The Court presumes the state court's factual findings to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence."  *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

**B.    Analysis**

*1.    Amendment of Charges*

Petitioner asserts in his first ground for relief that the state was improperly permitted to amend the charges in his case after the statute of limitations expired.  Dkt. 4 at 5.  Petitioner explains that he was originally charged in 1997 with three counts of attempted first degree felony murder, and that he was subsequently charged with three counts of attempted first degree murder after his convictions on the original charges were vacated in 2017.  *Id*.  Petitioner objected to the new charges, arguing that the state's amendment of the charges was not permissible because the new charges were substantially broader than the offenses that had originally been charged within the statute of limitations.  *See id*. at 17-18.  The trial court, however, allowed the amendment.  *Id*. at 18; *see also* Dkt. 8, Ex. 16.

The trial court specifically concluded that, under Washington law, the limitations period was tolled from the date the original charges were filed in October 1997, to the date those charges were vacated in July 2017, and that the amended charges, filed in September 2017, were therefore filed within the statute of limitations.  Dkt. 8, Ex. 16 at 3.  The trial court further found that the amended charges related to the same offenses charged in 1997, and that the state had not broadened or substantially amended the charges.  *Id*., Ex. 16 at 4.

Petitioner challenged the amendment of the charges on appeal, and the Washington Court of Appeals affirmed the decision of the trial court.  *See* Dkt. 8, Ex. 2 at 6-10.  The Court of Appeals concluded that the statute of limitations did not bar the charges because the new charges

REPORT AND RECOMMENDATION
PAGE - 9

1    "substantially related" to the original charges, and the limitations period was therefore tolled.

2    Petitioner argues here that the Washington Court of Appeals did not conduct a proper analysis to

3    determine if the new charges broadened or substantially amended the timely filed original

4    charges.  *See* Dkt. 4 at 5.  Respondent argues that the alleged violation of the state statute of

5    limitations raises an issue of state law, not federal law, and that Petitioner's first ground for relief

6    therefore does not present a cognizable claim for federal habeas relief.  Dkt. 7 at 13.

7        It is well established that "federal habeas corpus relief does not lie for errors of state

8    law."  *Lewis v. Jeffers*, 497 U.S. 764 (1990).  The Supreme Court emphasized in *Estelle v.*

9    *McGuire*, 502 U.S. 62 (1991), that it is not the province of federal habeas courts to re-examine

10   state court conclusions regarding matters of state law and that a federal court, in conducting

11   habeas review "is limited to deciding whether a conviction violated the Constitution, laws or

12   treaties of the United States."  *Id*. at 67-68; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)

13   ("We have repeatedly held that a state court's interpretation of state law, including one

14   announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

15   corpus.").

16       Petitioner does not allege in his petition that the state courts' resolution of the statute of

17   limitations issue violated his federal constitutional rights, nor does he address in his briefing

18   Respondent's argument that the claim is not cognizable on federal habeas review.  In fact,

19   Petitioner's extensive briefing with respect to this issue focuses on the manner in which the state

20   courts applied state law in analyzing his statute of limitations claim.  *See* Dkt. 4 at 18-31; Dkt. 9

21   at 6-16.  Petitioner does argue in his briefing that this Court should grant review of his claim

22   under § 2254(d)(2) because the State court's ruling was based on an unreasonable determination

23   of the facts in light of the evidence presented in the State court proceedings.  *See* Dkt. 4 at 29-31;

REPORT AND RECOMMENDATION
PAGE - 10

Case 3:22-cv-05957-JLR   Document 12   Filed 05/26/23   Page 11 of 32

Dkt. 9 at 14-16.  However, because Petitioner has not presented the Court with a claim

implicating his federal constitutional rights, his claim is not properly before this Court in the first

instance and § 2254(d)(2) therefore does not apply.

Moreover, as Respondent correctly points out, even if Petitioner's claim could be

construed as one implicating constitutional concerns, the state court's decision that the state

statute of limitations did not bar the challenged amendments to the charging document was a

determination of state law that is binding on this Court.  Petitioner's first ground for relief is not

cognizable in this proceeding and his federal habeas petition should therefore be dismissed with

respect to that claim.

> 2.      *Right to Present a Defense*

Petitioner asserts in his second ground for relief that he was denied his Sixth Amendment right to

present a defense when the trial court prohibited him from eliciting information that the plan

among he and his accomplices, if they were to be followed by police after the bank robbery, was

to shoot at police vehicles to disable them, not attempt to kill the officers.  *See* Dkt. 4 at 7, 31-37.

Respondent argues that the Washington Court of Appeals reasonably determined that exclusion

of the proffered evidence did not deprive Petitioner of his right to present a defense.  Dkt. 7 at

14-17.

The Constitution guarantees a criminal defendant a meaningful opportunity to present

relevant evidence in his own defense at trial.  *See, e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 408

(1988); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  "The Supreme Court has made clear that

the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth

Amendment due process right to a fair trial and the Sixth Amendment right to present a defense."

*DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) (citations omitted).  However, "the

PAGE - 11

right to present relevant testimony is not without limitation.  The right 'may, in appropriate

cases, bow to accommodate other legitimate interests in the criminal trial process.'"  *Rock v.*

*Arkansas,* 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

Relevant evidence may be excluded for failure to comply with procedural requirements,

and "any number of familiar and unquestionably constitutional evidentiary rules also authorize

the exclusion of relevant evidence."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (plurality

opinion).  "While the Constitution ... prohibits the exclusion of defense evidence under rules that

serve no legitimate purpose or that are disproportionate to the ends that they are asserted to

promote, well-established rules of evidence permit trial judges to exclude evidence if its

probative value is outweighed by certain other factors such as unfair prejudice, confusion of the

issues, or potential to mislead the jury."  *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

The Washington Court of Appeals rejected Petitioner's claim that he was denied the right

to present a complete defense, and explained its conclusion as follows:

> Bianchi argues that the trial court violated his constitutional right to present
> a defense at the second trial.  He contends that the court did not allow testimony
> that the plan was to shoot at the police vehicles to disable them, rather than kill the
> officers.  The State responds that the statements were properly excluded under the
> rules of hearsay, and that even with the exclusion, Bianchi was still able to argue
> his theory of the case.
>
> "We review an alleged denial of the constitutional right to present a defense
> de novo."  *State v. Lizarraga*, 191 Wn. App. 530, 551, 364 P.3d 810 (2015).  The
> accused has a "right to a fair opportunity to defend against the State's accusations"
> under due process.  *Chambers v. Mississippi*, 410 U.S. 284. 294, 93 S. Ct. 1038, 35
> L. Ed. 2d 297 (1973).  However, the defendant's right to present a defense is not
> absolute.  *Lizarraga*, 191 Wn. App[.] at 553.  "The defendant's right to present a
> defense is subject to 'established rules of procedure and evidence designed to assure
> both fairness and reliability in the ascertainment of guilt and innocence.'"  *Id*.
> (quoting *Chambers*, 410 U.S. at 302).  Generally, a constitutional right to present a
> defense is not violated if a state or federal rule operates to exclude evidence.  *See*
> *State v. Strizheus*, 163 Wn. App. 820, 833, 262 P.3d 100 (2011).  But, an evidentiary
> rule violates the right to present a defense if the rule is arbitrary or disproportionate
> and infringes on a weighty interest of the accused.  *State v. Rafay*, 168 Wn. App.

REPORT AND RECOMMENDATION
PAGE - 12

734, 796, 285 P.3d 83 (2012).  "The Supreme Court has generally found such an abridgement only when the evidentiary ruling effectively prohibited the substantive testimony of the defendant on matters relevant to the defense or the testimony of a percipient witness."  *Id*.

During the first trial, Shilley Walker, Brock's girlfriend, testified that she and Brock had discussed what he would do if he was followed after a bank robbery. She stated that he told her that "he would shoot at the engine to try to make the car stop following them."

Before the second trial, Walker did not respond to her subpoena to testify. Bianchi sought to play the recording of Walker's previous testimony.  The State argued that the contents of Walker's testimony were inadmissible as hearsay because of the statement by Brock.  The trial court ruled that the statement was problematic and excluded the evidence.  With this evidence excluded at the second trial, Bianchi could argue during closing argument that Bianchi's accomplices had an intent to disable the police vehicles and not murder the officers.[3]

Bianchi alleges that Walker's testimony is admissible as a statement against interest, a hearsay exception under ER 804(b)(3). [footnote omitted] The State argues that the evidence does not qualify as a statement against interest because it is self-serving.

We review whether hearsay is a statement against interest under ER 804(b)(3) for abuse of discretion.  *State v. J.K.T.*, 11 Wn. App. 2d 544, 566, 455 P.3d 173 (2019).  "Hearsay" is a statement made out of court offered as evidence to prove the truth of the matter asserted. ER 801(c); *State v. Bass*, 18 Wn. App. 2d 760, 794, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034, 501 P.3d 148 (2022). Hearsay is not admissible unless an exception applies.  ER 802.  One exception allows admission of a statement against interest if the declarant is unavailable to testify.  ER 804(b)(3).  A statement against interest is a statement that a reasonable person in the declarant's position would have made only if the person believed it to be true, would expose the declarant to criminal liability, and is supported by corroborating circumstances that indicate its trustworthiness.  ER 804(b)(3).

To determine the reliability of Brock's statement, and if it was a statement against interest, the trial court considered the "*Ryan* factors." [footnote omitted] *See State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).  Those factors include,

---

[3] The Court finds this sentence somewhat confusing in relation to the sentence that precedes it. However, a review of the transcript of Petitioner's second trial shows that Petitioner's counsel was still able to argue during closing argument that Petitioner's accomplices had an intent to disable the police vehicles, not murder the officers.  *See* Dkt. 8, Ex. 35 at 316-322.

REPORT AND RECOMMENDATION
PAGE - 13

> '(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness'[; (6)] the statement contains no express assertion about past fact, [(7)] cross-examination could not show the declarant's lack of knowledge, [(8)] the possibility of the declarant's faulty recollection is remote, and [(9)] the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Id*. (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)).  These factors are used to determine trustworthiness and reliability of the speaker and statements. *Id*. at 175; *Parris*, 98 Wn.2d at 146.  In *Ryan*, a statement made spontaneously to one person helped weigh the statement as not trustworthy. *See* 103 Wn.2d at 176.

The trial court here analyzed each *Ryan* factor.  First, whether Brock had a motive to lie did not apply here.  Second, on Brock's general character, the judge stated, "[W]hat we heard about that was that Mr. Brock said a lot of stuff that wasn't true – that's a negative indicator."  Third, only one person heard the statements, which, following *Ryan*, weighs against trustworthiness.  Fourth, the statements were not spontaneous, they were part of a conversation; the trial court stated this factor did not apply here.  Fifth, the timing of the statement was unknown, and Brock was saying it to a trusted person, which weighs towards trustworthiness.  The trial court noted the difficulty of analyzing the sixth factor.  The statement was not an express assertion of past fact at the time it was made, and appeared to be problematic due to its prospective hypothetical nature.  Seventh, cross-examination would not help, as Brock was deceased.  Eighth, the possibility of whether Brock's recollection was faulty does not apply, as he was not stating something that happened in the past.  Ninth, and finally, the factor looking to the circumstances surrounding the statement to see if the declarant misrepresented their involvement did not apply.  Overall, the trial court stated, "As I review these *Ryan* factors, it really underscores what appears to be a problematic statement.  I'm going to disallow the evidence because I don't think there are indications of trustworthiness."  We agree that under the *Ryan* factors, the statement was not a statement against interest.

The trial court did not abuse its discretion in excluding Walker's previous testimony about the statement by Ahern.[4]  Bianchi was not deprived of his constitutional right to present his theory of the case.

---

[4] The Court of Appeals presumably intended to reference the statement by Brock as that was the subject of its foregoing analysis.

REPORT AND RECOMMENDATION
PAGE - 14

Dkt. 8, Ex. 2 at 11-15.

Petitioner fails to demonstrate that the Court of Appeals' adjudication of this claim was contrary to, or constitutes an unreasonable application of, clearly established federal law. Petitioner argues in his federal habeas petition that the trial court's exclusion of Shilley Walker's testimony at his second trial violated his constitutional right to present a defense because the evidence was both admissible and critical to his defense. *See* Dkt. 4 at 32. In particular, Petitioner argues that the evidence that his accomplice, Brock, planned to merely disable the vehicles of pursuing police officers "was directly relevant to the primary factual issue for the jury regarding the shootings: whether [Petitioner's] accomplices had been trying to kill the police officers." *Id*. at 33. Petitioner also posits that this evidence could have formed the basis for the jury's hung verdicts on the attempted murder counts pertaining to Officers Zapata and Millard at his first trial. *Id*. at 32.

The record before this Court reflects that, at Petitioner's first trial, the defense argued that Mr. Brock's statement was admissible under Washington Rule of Evidence ("ER") 804(b)(3) as a statement against interest by an unavailable declarant. *See* Dkt. 8, Ex. 31 at 248-50. The state objected on the grounds that the statement wasn't relevant and that it did not meet the requirements for a statement against interest. *See id*., Ex. 31 at 250-51. The parties made these arguments to the court after Ms. Walker was questioned regarding her anticipated trial testimony during a hearing on the defense's offer of proof. *Id*., Ex. 31 at 241-46. The trial court, after hearing Ms. Walker's anticipated testimony and the arguments of counsel, concluded that the testimony was relevant, material, and probative, and that it satisfied the exception under ER 804(b)(3) for admission as a statement against interest. *Id*., Ex. 31 at 251-52.

REPORT AND RECOMMENDATION
PAGE - 15

1    At Petitioner's second trial, the defense sought to admit the recording of Ms. Walker's

2    testimony from the first trial. Dkt. 8, Ex. 35 at 51-52. The state, though it did not object to the

3    playing of Ms. Walker's old testimony at the second trial should it be deemed admissible, argued

4    that the content of the testimony was not admissible. *Id*., Ex. 35 at 52-53. The defense once

5    again argued that Mr. Brock's statement was admissible under ER 804(b)(3) as a statement

6    against interest. *Id*., Ex. 35 at 54-56. The state argued that circumstances regarding the

7    trustworthiness of the statement had changed because of the way the testimony came out at the

8    first trial, and it again argued that the statement did not meet the requirements for a statement

9    against interest. *See id*. at 56-62.

10    After reviewing Ms. Walker's testimony from the first trial, the trial court conducted a

11    detailed analysis of the proffered statement in light of Ms. Walker's prior testimony. *See* Dkt. 8,

12    Ex. 35 at 68-74. The trial court did not conclusively determine whether Mr. Brock's statement

13    was a statement against interest, noting that it was "not a clear statement of criminal liability."

14    *Id*., Ex. 35 at 70. The court indicated that it would, instead, analyze the statement only under the

15    *Ryan* factors in order to determine its reliability. *See id*. After discussing each of the *Ryan*

16    factors, the trial court concluded that the statement was not trustworthy, and that Ms. Walker's

17    prior testimony would therefore not be admitted. *See id*., Ex. 35 at 70-74. As the portion of the

18    Court of Appeals' opinion excerpted above reflects, that court determined that Mr. Brock's

19    statement did not satisfy the requirements for admission as a statement against interest under ER

20    804(b)(3).

21    Petitioner does not identify in his materials any United States Supreme Court precedent

22    establishing that the right to present a defense may be violated by a state court's exclusion of a

23    hearsay statement that is deemed untrustworthy and therefore inadmissible under an exception to

the hearsay rule. The Ninth Circuit has observed, with respect to Supreme Court precedent on the intersection of constitutional rights and state evidentiary rules, that the Supreme Court's cases have focused on whether an evidentiary rule, by its own terms, violates a defendant's right to present a defense. *See Moses v. Payne*, 555 F.3d 742, 757-58 (9th Cir. 2009); *see also Brown v. Horell,* 644 F.3d 969, 983 (9th Cir. 2011).

Petitioner's argument does not challenge the constitutionality of the exclusionary rule itself but, instead, focuses on the trial court's exercise of its discretion to exclude Mr. Brock's statement. As the Ninth Circuit noted in both *Moses* and *Brown*, the Supreme Court has not "squarely addressed" whether a trial court's exercise of discretion to exclude evidence violates a defendant's right to present a complete defense, nor has it clearly established a "controlling legal standard" for evaluating such exclusions. *See Moses*, 555 F.3d at 758; *Brown*, 644 F.3d at 983. Petitioner therefore cannot show that the Washington Court of Appeals' decision upholding the exclusion of Mr. Brock's hearsay statement is contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See Smith v. Small*, 697 Fed. App'x 538, 539 (9th Cir. 2017) (state appellate court ruling affirming trial court's exclusion of proposed defense witnesses was not contrary to clearly established federal law because the Supreme Court has not squarely addressed the constitutionality of the discretionary exclusion of evidence).

Moreover, the record makes clear that even though Mr. Brock's statement going to intent was not admitted, this did not preclude the defense from arguing its theory of the case. Indeed, during closing argument, defense counsel argued vigorously that that the evidence did not support the conclusion that there was any intent to kill on the part of Petitioner and his accomplices. Dkt. 8, Ex. 35 at 315-322, 327, 331, 337-344. Defense counsel, in making these

REPORT AND RECOMMENDATION
PAGE - 17

arguments, relied, in particular, on statements Petitioner made during his confession to the police and on the physical evidence presented at trial. *See id*.

Finally, even assuming Petitioner were able to establish that Mr. Brock's statement was improperly excluded and that his right to present a defense had been violated, a violation of the right to present a defense merits habeas relief only if the error had a substantial and injurious effect on the verdict. *See Lunbery v. Hornbea*k, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Petitioner makes no such showing here.

Though Petitioner posits that the admission of Mr. Brock's statement at the first trial might have formed the basis for the jury's hung verdicts on the attempted murder counts pertaining to Officers Zapata and Millard, Petitioner was nonetheless convicted at his first trial on the attempted murder count pertaining to Sergeant Hogman. Presumably, if the jury had found Mr. Brock's statement persuasive on the issue of intent, it would not have found Petitioner guilty of the attempted murder charge as to Sergeant Hogman.

In addition, as the prosecutor pointed out during closing argument, because Petitioner was charged as an accomplice, he was responsible for the conduct and intent of both Mr. Brock and Mr. Ahern. Dkt. 8, Ex. 35 at 289. The evidence presented at trial established that both Mr. Brock and Mr. Ahern were shooting out of their vehicle towards the police cars, and that Mr. Ahern was using an assault rifle which he reloaded twice during the police chase. *Id*., Ex. 34 at 278, 290-92, 307-08. Also presented at trial was evidence that Mr. Ahern's favorite movie was *Natural Born Killers*, a movie in which a lot of police officers were killed. *See id*., Ex. 34 at 207-08. Mr. Ahern's girlfriend testified that when they watched that movie together, in particular the scenes where police officers were killed by the main characters, Mr. Ahern said, "That's cool." and "It would be awesome." *Id*., Ex. 34 at 208. Even if evidence of Mr. Brock's

REPORT AND RECOMMENDATION
PAGE - 18

1    purported intent had been admitted, there was sufficient evidence in the record for the jury to

2    find Petitioner guilty of attempted murder based solely on Mr. Ahern's intent.

3        In sum, Petitioner makes no showing that, in light of the record as a whole, the omission

4    of Mr. Brock's statement from his second trial had a "substantial and injurious effect on the

5    verdict." *See Lunbery*, 605 F.3d at 762. Accordingly, Petitioner fails to demonstrate that he is

6    entitled to habeas relief based on the alleged violation of his right to present a defense and, thus,

7    Petitioner's federal habeas petition should be denied with respect to his second ground for relief.

8                *3.*    *Prosecutorial Misconduct*

9        Petitioner asserts in his third ground for relief that prosecutorial misconduct deprived him

10   of a fair trial. *See* Dkt. 4 at 8, 37-46. Petitioner identifies three bases for his prosecutorial

11   misconduct claim. Petitioner asserts that the prosecutor engaged in misconduct in the following

12   ways: (1) she misstated the law at Petitioner's second trial when she told the jury during closing

13   argument that "we don't even have to prove that they know both of [the police officers] were in

14   the vehicle"; (2) she misrepresented the defense argument and created a false choice for the jury

15   between finding that Officers Millard and Zapata were lying or finding Petitioner guilty; and (3)

16   she told the jury during closing argument at Petitioner's first trial that after 21 years, they needed

17   to hold Petitioner accountable. *See* Dkt. 4 at 8, 38-46. Respondent argues that the Washington

18   Court of Appeals reasonably determined that Petitioner did not show misconduct rendering his

19   trial unfair and causing actual prejudice. *See* Dkt. 7 at 8-23.

20       When a prosecutor's conduct is placed in question, unless the conduct impermissibly

21   infringes on a specific constitutional right, the standard of review is the "narrow one of due

22   process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168,

23   181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974). To obtain relief on a

REPORT AND RECOMMENDATION
PAGE - 19

claim of prosecutorial misconduct, a federal habeas petitioner must do more than show that "the prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-81. A petitioner must demonstrate that the allegedly improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly*, 416 U.S. at 643).

In order to assess a claim that a prosecutor's comments rendered a trial so fundamentally unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987). A reviewing court must keep in mind that during closing argument a prosecutor has wide latitude to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

On federal habeas review, prosecutorial misconduct which rises to the level of a constitutional violation nonetheless provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

The Washington Court of Appeals rejected each of Petitioner's prosecutorial misconduct claims on direct appeal. The court began by setting forth the standard applicable to prosecutorial misconduct claims on appeal, a standard consistent with that set forth above (Dkt. 8, Ex. 2 at 18), and then proceeded to address each of the specific alleged incidents of misconduct (*See id*., Ex. 2 at 19-24).

REPORT AND RECOMMENDATION
PAGE - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

a. <u>Misstatement of the Law</u>

The Court of Appeals rejected Petitioner's claim that the prosecutor misstated the law, concluding that though the prosecutor had, in fact, misstated the law, Petitioner had not shown the required prejudice. The court explained its conclusion as follows:

> Bianchi argues that the prosecutor misstated the law during the closing argument at his second trial, amounting to prosecutorial misconduct. He claims that the prosecutor erroneously stated that the jury did not need to find that Bianchi was aware of the presence of two officers in the car for him to be convicted of attempted first degree murder of Officers Zapata and Millard. Because Bianchi did not object to this statement at trial, he has the burden to prove that the statement was so flagrant and ill-intentioned that a jury instruction could not have cured it. [*In re Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).]

> Bianchi was charged with attempted murder in the first degree, under statutes RCW 9A.32.030(1)(a), RCW 9A.28.020(3)(a), and RCW 9A.08.020(3). RCW 9A.32.030(1) states, "A person is guilty of murder in the first degree when: (a) With a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person." Under RCW 9A.28.020, "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(3)(a) states that an attempt is a "[c]lass A felony when the crime attempted is murder in the first degree [or] murder in the second degree." Under RCW 9A.08.020(3),

> > [a] person is an accomplice of another person in the commission of a crime if:
> > (a)  With knowledge that it will promote or facilitate the commission of the crime, he or she:
> > (i) Solicits, commands, encourages, or requests such other person to commit it; or
> > (ii) Aids or agrees to aid such other person in planning or committing it.

> A person is guilty of murder in the first degree when "a substantial step was taken to criminally end someone's life." *State v. Smith*, 115 Wn.2d 775, 782, 801 P.2d 975 (1990) (emphasis omitted). "First degree murder is the killing of one person by another person with premeditation." *State v. Mannering*, 112 Wn. App. 268, 273, 48 P.3d 367 (2002), *aff'd*, 150 Wn.2d 277, 75 P.3d 961 (2003). The two jury instructions about attempted murder in the first degree state that the jury must find beyond a reasonable doubt that, "the act was done with the intent to commit Murder in the First Degree" of Officers Zapata and Millard.

REPORT AND RECOMMENDATION
PAGE - 21

1

2

"A prosecuting attorney commits misconduct by misstating the law." *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). In the closing argument, the prosecutor stated:

3

4

5

6

Now, we also don't have to prove that they knew Officers Zapata and Millard personally. For [m]urder, it doesn't have to be some vendetta that's been closely held for years and years. You don't have to know the person at all. *We don't even have to prove that they knew both of them were in that vehicle.* We have to prove that when they fired the guns at the police officers in the car, what their intent was. And again, that's clear from their actions. And it's clear, again, from what they brought.

7

8

9

(Emphasis added.) Because first degree murder requires premeditation, and because the jury instructions included an "intent to commit Murder," Bianchi and his associates needed to know that the individual police officers were in the car when they were shooting. The prosecutor misstated the law.

10

11

12

13

14

The burden is on Bianchi to show that this statement is flagrant, ill-intentioned, and so prejudicial that an instruction to the jury could not cure it. *Glasmann*, 175 Wn.2d at 704. To show prejudice requires that the defendant show a substantial likelihood that the misconduct affected the jury verdict. *Id.* Bianchi does not argue that the court could not have instructed the jury adequately to cure this mistake, or that the jury verdict was affected by the misstatement. And, as a practical matter it would have been easy for the court to correct the State's error had Bianchi objected. Bianchi has not shown prejudice.

15

Dkt. 8, Ex. 2 at 19-21.

16

The Court of Appeals reasonably concluded that the state's error could have been easily

17

corrected had Petitioner objected to it at trial. Notably, the prosecutor made the same statement

18

during closing argument at Petitioner's first trial, and it did not draw an objection on that

19

occasion either. *See* Dkt. 8, Ex. 31 at 421-22. This suggests that the statement did not appear

20

prejudicial to Petitioner's counsel in the context of trial as a whole, and this Court concurs with

21

the Court of Appeals that Petitioner has shown no prejudice.

22

The statement at issue was a single sentence in a lengthy closing argument during which

23

the prosecutor made repeated references to the instructions, and arguments about how the

1    evidence presented at trial proved the elements of the crimes as set forth in the instructions.  *See*

2    Dkt. 8, Ex. 35 at 279-313.  Petitioner takes no issue with the manner in which the jury was

3    instructed with regard to the elements of attempted first degree murder, and the record reflects

4    that the jury was separately instructed as to what was required to convict Petitioner of attempted

5    first degree murder with respect to Officer Zapata and Officer Millard.  *See id.*, Ex. 35 at 265-68.

6    Thus, the instructions made clear that these were separate offenses that had to be proved

7    independently.  The instructions also specifically advised the jurors that they were to "disregard

8    any remark, statement, or argument" by the lawyers that was "not supported by the evidence or

9    the law in my Instructions."  *Id.*, Ex. 35 at 260.

10        The Court must assume, in the absence of evidence to the contrary, that the jury followed

11   its instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481

12   U.S. 200, 206, 211 (1987).  The jurors were properly instructed on the law and were also

13   specifically instructed to disregard any statements by the lawyers that were inconsistent with the

14   law provided to them by the trial judge.  As no prejudice has been established, the Court of

15   Appeals' rejection of this portion of Petitioner's prosecutorial misconduct claim was not an

16   unreasonable application of clearly established federal law and should be denied.

17                     **b.**    <u>Misrepresentation of Defense Theory</u>

18        The Washington Court of Appeals also rejected Petitioner's claim that the prosecutor

19   misrepresented the defense theory during closing argument.  The court explained its conclusion

20   as follows:

21             Bianchi alleges the prosecutor mischaracterized the defense theory during
     rebuttal.  A prosecutor has "wide latitude to argue reasonable inferences from the

22   evidence," but must seek convictions based on probative evidence and sound
     reason.  *Id*.  For Bianchi to prevail on this claim, he needs to prove that these

23   statements were improper and prejudicial.  *Id*.

REPORT AND RECOMMENDATION
PAGE - 23

1    Bianchi argues:

        The prosecutor's rebuttal theme that Mr. Bianchi was trying to suggest that Officers Zapata and Millard had been lying was improper.  The argument went "beyond the bounds of acceptable behavior by disparaging defense counsel." [*State v. ]Thorgerson*, 172 Wn.2d[ 438,] 451-52[, 258 P.3d 43 (2011)].  It also created a "straw man," mischaracterizing Mr. Bianchi's theory of the defense in order to invalidate it.  [*State v. ]Thierry*, 190 Wn. App.[ 680,] 694[, 360 P.3d 940 (2015)].  The argument is also improper because it mischaracterized the state's burden of proof by presenting the jury with a false choice between finding that the officers were lying and finding Mr. Bianchi guilty.  [*State v. ]Miles*, 139 Wn. App.[ 879,] 889-90[, 162 P.3d 1169 (2007)]; [*State v. ]Fleming*, 83 Wn. App.[ 209,] 213[, 921 P.2d 1076 (1996)].

We do not agree with Bianchi's characterization of the State's closing argument.

    Bianchi's closing argument raised questions about the officers' statement about the shootings:

        So in this case, the State has to prove to you beyond a reasonable doubt that the intent of Brock and Ahern was to kill – that was their intent.  Now, when it comes to these officers (sic) testimonies, they are wildly inconsistent with the physical evidence.  But I can't say – I'm not going to argue because I don't have proof of it.  I can't prove that they're intentionally lying because I don't have evidence of it.

During rebuttal, the State made the two statements in question:

        . . . . [T]here was a lot of talk about that ravine and, frankly, suggestion that the law enforcement officers in this case were lying.  That is what was said – that was a suggestion.  The only inference was that Officer Zapata and Officer Millard sat up there and they lied to you about being shot at. . . .

    . . . .

        . . . . So all this suggestion about the ravine going to these officers' credibility – what's the implication there that Defense was trying to make?  That they're lying and therefore they weren't shot at?  I mean, that's the only implication they can be making because all that matters is whether or not these officers have been shot at.

REPORT AND RECOMMENDATION
PAGE - 24

The State was responding to Bianchi's closing argument that the officers' testimony was not credible in light of the physical evidence. The defense said it could not prove the officers were intentionally lying, which implied that they were lying. The State did not misrepresent defense counsel's arguments or the record. The State drew reasonable inferences. These statements made during rebuttal do not amount to misconduct by the prosecutor. In portions of the closing not addressed by Bianchi, the prosecutor responded directly to the strength of the evidence. And, the prosecutor properly referenced the burden of proof in the closing argument: "[I]f you are convinced beyond a reasonable doubt that I have proven these elements, it is your duty to convict the [d]efendant." These statements were not improper.

Dkt. 8, Ex. 2 at 21-22.

The Court of Appeals reasonably concluded, based upon its review of the arguments made during closing, that the prosecutor's challenged comments were made in response to defense counsel's suggestion that Officers Zapata and Millard were lying in their testimony. An argument that is an "invited response" to defense counsel's remarks does not prejudice the jury. *United States v. Young*, 470 U.S. 1, 11-13 (1985) ("[I]f the prosecutor's remarks were 'invited,' and did no more than respond in order to 'right the scale,' such comments would not warrant reversing a conviction."); *see also United States v. de Cruz*, 82 F.3d 856, 863 (9th Cir. 1996) (holding prosecutor's improper rebuttal argument to be harmless in part because it was an invited response). Once again, as no prejudice has been established, the Court of Appeals' rejection of this portion of Petitioner's prosecutorial misconduct claim was not an unreasonable application of clearly established federal law and should be denied.

c.    Accountability of Defendant

Finally, the Washington Court of Appeals addressed and rejected Petitioner's claim that the prosecutor improperly told the jury during closing argument that they needed to hold Petitioner accountable:

Bianchi argues that the prosecutor committed misconduct by asking the jury to hold Bianchi accountable for his actions. He argues that this statement made by

REPORT AND RECOMMENDATION
PAGE - 25

the prosecutor at the first trial is improper: "[A]fter these twenty-one years, I am asking you to hold [Bianchi] accountable for what he did. I'm asking you to hold him accountable for the actions of him and his accomplices on October 17, 1997."

"Prosecutors have a duty to seek verdicts free from appeals to passion or prejudice." *State v. Perez-Mejia*, 134 Wn. App. 907, 915, 143 P.3d 838 (2006). Prosecutors engage in misconduct "when making an argument that appeals to jurors' fear and repudiation of criminal groups or invokes racial, ethnic, or religious prejudice as a reason to convict." *Id*. Additionally, "inflammatory remarks, incitements to vengeance, exhortations to join a war against crime or drugs, or appeals to prejudice or patriotism are forbidden." *Id*.

Bianchi cites to *Perez-Mejia*.[5] In that case, the prosecutor asked the jury to "send a message." *Id*. at 917. The prosecutor stated, "Send a message to Scorpion, to other members of his gang . . . and to all the other people who choose to dwell in the underworld of gangs. That message is we [have] had enough. We will not tolerate it any longer." *Id*. Elsewhere in closing argument, the prosecutor made statements about the defendant's ethnicity. *Id*. at 918. In *Perez-Mejia*, the "send a message" language improperly injected issues about nationality and ethnicity, bringing up issues of racial prejudice. *Id*. at 917-18.

However, *Perez-Mejia*, is inapposite. First, the prosecutor stating, "I'm asking you to hold him accountable" does not raise any issues of the racial prejudice that was found improper in *Perez-Mejia*. Nor did the prosecutor appeal to the passion and prejudice of the jury generally. Second, the prosecutor in *Perez-Mejia* asking the jury to "send a message" to gang members differs from asking the jury to "hold the defendant accountable" based on the evidence. Conviction and sentencing are by nature holding one accountable for criminal acts.

Dkt. 8, Ex. 2 at 23-24.

Petitioner fails to demonstrate that the Court of Appeals' adjudication of this claim was contrary to, or constitutes an unreasonable application of, clearly established federal law. Petitioner asserts that the prosecutor, by encouraging the jury to hold him accountable for his

---

[5] [Court of Appeals footnote 8] To further argue prosecutorial misconduct, Bianchi cites a case from New Jersey to argue that the prosecutor's statement about holding Bianchi accountable misstates the jury's role, which should be only to weigh the evidence and hold the state to its burden of proof, instead of considering accountability. *State v. Neal*, 361 N.J. Super. 522, 537, 836 A.2d 723 (App. Div. 2003). This case is not controlling in Washington. He also argues that this statement had an "inflammatory effect on the jury," is not curable by instruction, and is flagrant and ill intentioned. However, Bianchi just states these allegations without other legal argument.

REPORT AND RECOMMENDATION
PAGE - 26

1   actions, and for those of his accomplices, misstated the jury's role and "diverted the jury from its

2   duty to hold the state to its burden [of proof]." *See* Dkt. 4 at 45; *see also* Dkt. 9 at 25-26.  The

3   record, however, undermines these assertions.  Not only was the jury clearly instructed regarding

4   the state's burden of proof prior in closing argument, the prosecutor, at the outset of her closing

5   argument, discussed that burden before proceeding to argue how she believed the evidence

6   admitted at trial supported each of the charged offenses.  *See* Dkt. 8, Ex. 31 at 375-376, 404-449.

7   During rebuttal closing argument, just prior to making the statement challenged here, the

8   prosecutor responded in detail to the defense's closing argument while highlighting the evidence

9   she believed proved the charges brought against Petitioner, and she then once again referenced

10  the instruction pertaining to the state's burden of proof.  *See id*., Ex. 31 at 478-500, Ex. 32 at 6-9.

11       Petitioner suggests that the argument was improper, and even inflammatory.  This Court

12  disagrees.  The Ninth Circuit has held that "[P]rosecutors may not urge jurors to convict a

13  criminal defendant in order to protect community values, preserve civil order, or deter future

14  lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be

15  convicted for reasons wholly irrelevant to his own guilt or innocence." *United States v.*

16  *Barragan*, 871 F.3d 689, 707 (9th Cir. 2017) (citations omitted).  However, when a prosecutor

17  urges a jury to hold a defendant accountable for their actions for evidentiary reasons, such

18  arguments are not improper.  *See id*. at 708.

19       When the statement at issue here is viewed in context, and in light of the record as a

20  whole, the statement is reasonably construed as one exhorting the jury to find Petitioner guilty of

21  each of the charged offenses, based on the evidence presented at trial, and thereby hold him

22  accountable for his criminal conduct.  Thus, the Court of Appeals reasonably concluded that the

23  prosecutor's request during rebuttal closing argument that the jury hold Petitioner accountable

REPORT AND RECOMMENDATION
PAGE - 27

1    did not constitute misconduct, and this portion of Petitioner's prosecutorial misconduct claim

2    should therefore be denied.

3                    4.        *Ineffective Assistance of Counsel*

4            Petitioner asserts in his fourth ground for relief that trial counsel at his second trial

5    rendered ineffective assistance when she objected to inadmissible, prejudicial evidence on the

6    wrong grounds.  Dkt. 4 at 10, 46-49.  Petitioner claims that the evidence at issue constituted

7    inadmissible character evidence under ER 404(a), but his attorney objected to the evidence only

8    on relevance and ER 403 grounds.  *See id.* at 16, 46-49.  At issue is testimony the State sought to

9    elicit from prosecution witness Donna Nightingale regarding a statement made by Aaron Ahern

10   while the two were watching the movie *Natural Born Killers*.  *See id.* at 46-49.  In particular, the

11   prosecutor sought to elicit testimony that when the characters in the movie killed police officers,

12   Mr. Ahern said he thought that would be cool.  *See id*.

13           The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

14   counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  "The essence of an ineffective-

15   assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

16   defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

17   *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  Claims of ineffective assistance of counsel

18   are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant

19   must prove (1) that counsel's performance was deficient and, (2) that the deficient performance

20   prejudiced the defense.  *Strickland*, 466 U.S. at 687.

21           With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

22   performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.

23   Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair

assessment of attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time." *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to

counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694.  The reviewing court need not address

both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims

of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

at 101.  Rather, when considering an ineffective assistance of counsel claim on federal habeas

review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

was unreasonable." *Id*.  As the Supreme Court explained in *Harrington*, "[a] state court must be

granted a deference and latitude that are not in operation when the case involves review under

the *Strickland* standard itself." *Id*.

The Washington Court of Appeals denied Petitioner's ineffective assistance of counsel

claim on direct appeal.  The Court of Appeals began its discussion by identifying the *Strickland*

standard as the standard applicable to Petitioner's ineffective assistance claim. Dkt. 8, Ex. 2 at

15-16.  The Court of Appeals then went on to explain its conclusion that Petitioner had not

established ineffective assistance in relation to that standard:

> The State called Donna Nightingale to testify about Ahern, her significant
> other.  She testified that Ahern expressed an interest in killing police officers when

REPORT AND RECOMMENDATION
PAGE - 29

they watched their favorite move *Natural Born Killers* together. [footnote omitted] Nightingale said Ahern thought it was "cool" when the movie characters killed police officers. She stated it was the first movie they watched together. They had been together two years. She implied they had watched it multiple times but did not testify that they had watched it shortly before the robbery.

Before Nightingale testified, the trial court reviewed the admissibility of the statement. The State argued it was admissible under a state of mind exception to hearsay.[6] [Court of Appeals footnote omitted] The judge stated,

> In particular, I think – what the State has notified me that they're going to elicit as a statement regarding – that he made regarding when the characters in *Natural Born Killers* killed police and that that was cool. I would think that's relevant as to the declarant's intent which is at issue in this case because of the intent of Mr. Bianchi as an accomplice.
>
> So I think it's relevant and I do find it's relevant. Is there another reason why you would think that should not be admitted?

(Emphasis added). Responding to this, defense counsel objected to the testimony on the grounds of relevance.[7] The court overruled the objection, stating that the movie testimony was relevant and "probative of what Mr. Ahern's intent was in this timeframe, which is, in turn, at issue in the case." Bianchi has not assigned error to this ruling.

Bianchi argues that defense counsel should have objected to the evidence as inadmissible character evidence under ER 404(a). ER 404(a) states, "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."

Bianchi did not assign error to the admission of the movie evidence for the purpose of showing Ahern's mental state. Therefore, the evidence was properly before the jury for that purpose. An objection stating that the evidence was character evidence, even if sustained, would not have resulted in the exclusion of

---

[6] The Court of Appeals opinion does not contain citations to the record, and it is therefore unclear where this argument was made. However, the transcript of proceedings provided to this Court reflects no such argument. The transcript reveals that the prosecutor and the trial court were in agreement that the statement at issue did not constitute hearsay because it was not being offered for the truth of the matter asserted, and it's admissibility was therefore not analyzed as an asserted exception to the hearsay rule. *See* Dkt. 8, Ex. 34 at 159-164.

[7] [Court of Appeals footnote 7] Relevance is governed by ER 403, which states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

REPORT AND RECOMMENDATION
PAGE - 30

1
2
3

the evidence.  At best, the jury would have been instructed not to use the evidence for purposes of establishing character.  Since the evidence was properly before the court, counsel's failure to object on character grounds cannot establish the prejudice necessary to establish an ineffective assistance claim.

4   *Id.*, Ex. 2 at 15-18.

5   Petitioner fails to demonstrate that the Court of Appeals' application of the *Strickland*

6   standard was unreasonable.  The Court of Appeals concluded, as a matter of state law, that even

7   if Petitioner's counsel had successfully challenged the evidence on the grounds now advanced by

8   Petitioner, *i.e.*, as improper character evidence, the evidence would still have been admitted and,

9   thus, Petitioner could not establish the requisite prejudice to establish an ineffective assistance of

10  counsel claim. A state court's interpretation of state law is binding on a federal habeas court.

11  *Bradshaw*, 546 U.S. at 76.  Because, under state law, the evidence at issue would have been

12  admissible even if counsel had successfully objected to its admission as impermissible character

13  evidence under ER 404(a), Petitioner cannot establish prejudice based upon counsel's failure to

14  object.  Petitioner's federal habeas petition should therefore be denied with respect to his fourth

15  ground for relief.

16  ## C.   Certificate of Appealability

17  A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

18  dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

19  district or circuit judge.  A certificate of appealability may issue only where a petitioner has

20  made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A

21  petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

22  district court's resolution of his constitutional claims or that jurists could conclude the issues

23  presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

REPORT AND RECOMMENDATION
PAGE - 31

U.S. 322, 327 (2003).  Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## V.    CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.  This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action.  A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 23, 2023**.

DATED this 26th day of May, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 32